# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

Maryann Morrison,

Plaintiff

v.

Major Christopher Barca, in his official capacity,

Officer T. Hayashi, in his official capacity,

Nickolas Steryou, in his official capacity, Jerry Suiter, in his official capacity,

Palm Beach Gardens Police Department, Palm Beach Gardens Fire Rescue;

The City of Palm Beach Gardens in it's official capacity.

Defendants.

Case No.:_____

**JURY TRIAL REQUESTED**

FILED BY ___Mrb___ D.C.

OCT 29 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

**COMES NOW**, Plaintiff, Maryann Morrison, and hereby sues Defendants,

Major Christopher Barca, Officer T. Hayashi, Nickolas Steryou, Jerry Suiter, Palm

Beach Gardens Police Department, Palm Beach Gardens Fire Rescue; The City of

Palm Beach Gardens for her cause of action alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action in which the Plaintiff, Maryann Morrison, seeks relief from this Court for the battery of Morrison and for Defendants' violation of Morrison's civil rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, malicious prosecution, negligence, false arrest and false imprisonment, intrusion of privacy, conspiracy to carry out a false arrest, and violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq. ("ADA").

2. At all times material hereto, Maryann Morrison (hereinafter "Plaintiff") was and is a resident of Palm Beach County, Florida.

3. At all times material hereto, Defendant, Major Christopher Barca (hereinafter "Defendant Barca"), was a police officer, for Palm Beach Gardens Police Department located at 10500 North Military Trail

Palm Beach Gardens, FL 33410.

4. At all times material hereto, Defendant, Palm Beach Gardens Police Department (hereinafter "PBGPD") was a city police department, located at 10500 North Military Trail, Palm Beach Gardens, FL 33410.

5. At all times material hereto, Defendant, Officer T. Hayashi (hereinafter "Defendant Hiyashi"), was a police officer, for Palm Beach Gardens Police

1

Department located at 10500 North Military Trail

Palm Beach Gardens, FL 33410.

6. At all times material hereto, Defendant, Nickolas Steryou (hereinafter "Defendant Steryou"), was a Emergency Medical Technician, for Palm Beach Gardens Emergency Medical Services, Station 1, located at 4425 Burns Road, Palm Beach Gardens, FL 33410.

7. At all times material hereto, Defendant, Jerry Suiter (hereinafter "Defendant Steryou"), was a Emergency Medical Technician, for Palm Beach Gardens Emergency Medical Services, Station 1, located at 4425 Burns Road, Palm Beach Gardens, FL 33410.


**JURISDICTION AND VENUE**

8. This is an action for damages in excess of Fifteen Thousand Dollars ($15,000.00) arising from a battery in violation of Florida law, negligence resulting in the wrongful arrest and detainment of Morrison, a violation of the Fourth and Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. §

2

1983 and 42 U.S.C. 12132, 12182, 12203 (Americans with Disabilities Act of 1990, ADA, and a claim for attorney's fees pursuant to 42 U.S.C. § 1988.

9. Venue for this action is properly laid in the United States District Court for the Middle District of Florida, pursuant to Florida Statutes § 47.011 in that:

(a) The causes of action alleged in this Complaint accrued in Palm Beach County, Florida;

(b) Plaintiff is a resident of Palm Beach County, Florida;

10. This Court has jurisdiction pursuant to Florida Statutes § 26.012, 34.01 ( c ); and 28 USC§ 1343.

11. This is a Civil Rights complaint for declaratory, injunctive and other appropriate relief brought by Plaintiff, Maryann Morrison, a United States citizen, appearing pro se.

12. The Plaintiff brings this complaint for violations of her individual and associational rights under the Fourth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. 1983, 1985 and 1986; 42 U.S.C. 12132, 12182, 12203 (Americans with Disabilities Act of 1990, ADA).

13. The Plaintiff alleges that the Defendants acted under the color of state law when they falsely arrested and imprisoned her and caused her to be battered in the

course of her arrest, pursuant to Section 1983 which allows defendants to be found

liable when they have acted "under color of any statute, ordinance, regulation,

custom, or usage, of any State or Territory or the District of Columbia."

42 U.S.C. § 1983.


14. The Plaintiff is a qualified individual with disabilities, pursuant to the

Americans with Disabilities Act of 1990.

15. The Plaintiff was subjected to intrusion of privacy, battery, and false arrest on

November 1, 2014.

### FACTS APPLICABLE TO ALL COUNTS

16. On October 31, 2014, the Plaintiff, Maryann Morrison, and her three brothers,

Damien, Tommy, and Leslie Gilliams, went to the Dirty Martini, a night club

located at 11701 Lake Victoria Gardens Ave, Palm Beach Gardens, FL 33410, to

celebrate Halloween.

17. Morrison and her brothers had a few drinks and they danced.

18. Morrison has Crohn's Disease, which symptoms include abdominal pain

and severe diarrhea.

19. Morrison has no recollection of ever speaking with Officer Hayashi prior to the

incident that occured in the bathroom that night.

4

20. Morrison was inside of the club amidst a large group of people when she begin to feel symptomatic.

21. Morrison told her brother Tommy that she needed to use the bathroom and he went to the bathroom as well.

22. He used the restroom and when he came out, Morrison was still waiting outside in the hall to enter the restroom.

23. Morrison eventually moved up in the line into the women's restroom, but she could not wait any longer so when a stall opened up, she cut the line.

24. Morrison struggled to unbutton her jeans quickly, but it was too late.

25. Morrison was very upset and frustrated with herself because she was stuck in the stall trying to clean herself up and women were waiting outside upset that she had cut the line.

26. Morrison was wearing white jeans, which made matters worse.

27. Morrison put her head in her hands on several occasions while still going to the bathroom because Crohn's Disease comes in spasms.

28. Morrison is not sure how long she was in the bathroom when she started to hear men's voices.

29. The men were asking the other women to exit the bathroom.

30. Morrison started to panic because at any minute they would reach her stall. She had no idea they were there for her.

31. Morrison continued to clean herself up with toilet paper, frantically flushing so as not to clog the toilet. Morrison believes the sounds the EMS personnel and officer Hayashi heard were interpreted as an indication that she was attempting to flush illegal substances down the toilet, rather than toilet paper.

32. The men then ordered Morrison to exit the stall.

33. Morrison refused, telling them that she was using the restroom.

34. This exchange continued for a few minutes and then Morrison saw a man come over the stall to unlock the door.

35. Morrison was shocked that someone would enter the stall while she was still undressed and not ready to be exposed.

36. Morrison cursed at the man and tried to get up to hold the door closed knowing that there were men on the other side and her pants were still down because she was still using the toilet.

37. The men on the other side of the bathroom door pushed it open hitting Morrison in the face.

Morrison fell backward onto the toilet with her pants still down.

38. Morrison was extremely embarrassed, disoriented and in pain after the door thrown open by the EMS and PBGPD struck her in the face without warning.

39. After they had entered the stall, Morrison pulled up her soiled pants in front of all 3 men and cooperated completely. She answered all the questions asked by the EMS, and allowed them to check her vitals.

40. Morrison stated emphatically that she did not want to go to the emergency room.

41. EMS insisted that she get on the gurney, so they could transport her to the emergency room

42. Morrison refused treatment several times, worried about the cost of a trip to the emergency room.

43. Morrison refused to get on the gurney and pushed the Fire medic's hands away as he tried to force her on.  She had told them repeatedly she did not want or need treatment.

43. Morrison recalls clearly expressing that she has Crohn's disease and that was why she had lost control of her bowels and had an accident while still dressed.

44. Morrison also explained that was why there was blood present as well.

45. Morrison said that she just wanted to clean herself up, find her brothers, and go home.

46. Morrison was forced onto the gurney against her will, handcuffed and wheeled out of the club.

47. Morrison shut down and went into shock, because her next memory was being processed in the jail.

48. Morrison heard her brother Leslie repeatedly ask for his lawyer and was confused as to why her brother was also arrested.

49. Morrison asked multiple times why was she being arrested.

50. She was told "you know why."

51. Even during the next morning as she was processed for release, Morrison asked why she was arrested and was once again told, "You know why."


See Exhibit A: Ambulance Report

53. In the Ambulance Report, dated November 1, 2014, OCA 14-005411, the narrative describes R65 responding to a overdose/intoxication call.

54. The Report stated that PBGPD disclosed that they were alerted while on a special detail that a person inside the bathroom appeared to be "drunk and passed out." .

55. PBGPD stated that "the patient was in the bathroom stall with her pants around her ankles and kept flushing the toilet".

56. PBGPD also stated that "they were unable to get the patient out of the bathroom" and "after gaining access to the patient the patient states that there was nothing wrong" and "that she had 'three drinks' this evening."

57. R65 crew apparently had to climb over the top of the bathroom stall and unlock the door because Morrison would not follow commands and open the door.

58. Morrison was allegedly found sitting upright on a toilet in distress with a visible laceration to her eyebrow and visible blood and feces on her pants.

59. Pursuant to the Report, Morrison denied any weakness, dizziness, trauma, illness or injury.

60. Morrison's brother, Damien, allegedly interfered with R65 crew who tried to load Morrison in the back of the ambulance.

61. After Morrison was loaded in the back of the ambulance, according to the Report, she "started to get combative 'swinging and hitting' Fire Medic Nickolas Steryou."

62. Morrison was apparently told to stop swinging her arms, but she continued to do so.

63. PBGPD restrained Morrison to the stretcher with handcuffs and placed her under arrest.

64.  Morrison's brother, Damien, appeared again wishing to enter the ER with his sister.

65. PBGPD was contacted again because Morrison's brother, Leslie was allegedly hindering patient care.

66. Morrison's brother. Leslie, was apprehended and Morrison was turned over to the ER nurse and doctor.

See Exhibit B: Palm Beach Gardens Police Report.

67. In the PBG police report, dated November 1st, 2014, Case number 14-005411, the narrative describes Officer Christopher Baez's  report of the arrest complaint.

68. Upon arrival at the Garden E.R. Officer Baez made contact with EMT, Steryou, who stated that when he was addressing a laceration above Morrison's eye, Morrison started to "swing her arms and struck him in the head."

69. Morrison failed to obey his request to stop, and stuck him again.

70. The report states that Morrison knew that Nickolas Steryou was an EMS operator.

See Exhibit C: Interoffice Memorandum

71. Major Christopher Barca created an Interoffice Memorandum written to Chief Stephen Stepp on March 4, 2016, in response to Damien Gilliams Complaint referencing Officer Hiyashi, Case number 14-005411.

72. The complaint regarded Morrison's brother, Damien Gilliams access to his sister while she was being loaded into the back of an ambulance in front of the Dirty Martini.

73. The memorandum addressed this complaint in the context of the call that was allegedly made by Dirty Martini staff regarding Morrison.

74. Defendant Barca stated the following regarding the events that occurred late October 31, 2014 into early morning November 1st, 2014:

75. Security personnel at the Dirty Martini apparently called the Palm Beach Gardens Police because they saw Morrison stumble.

76. When Officer Hayashi arrived to the location, he observed Morrison to be, "disoriented and unaware of her surroundings."

77. Officer Hayashi also reported Morrison had slurred speech, blood on her clothing and a laceration above her right eye.

78. Morrison was unable to articulate what had caused the laceration and reportedly told Officer Hayashi nothing had occurred.

79. In the Interoffice Memorandum to Chief Stephen Stepp and from Major Christopher Barca on March 4, 2016 (attached as Exhibit 1), Officer Hayashi "knew that the stumbling and the uncooperative actions of Ms. Morrison could possibly be indicative of a serious head injury" and he did not know if she had been the victim of a battery or if a possible assailant was still in the area.

80. Morrison asked to use the restroom and the officer permitted her to do so.

81. According to the Interoffice Memorandum, the officer feared that Morrison was suffering from a serious medical condition, because she was spending an extended amount of time in the bathroom. The officer called EMS to assess her condition.

82. EMS personnel entered the restroom and proceeded to knock on the stall door where Morrison was located.

83. It was requested that the Morrison exit the stall several times.

84. Morrison refused.

85. Out of concern for Morrison's safety, a decision was made to reach over the partition and unlock the door, so that she could be treated.

86. EMS decided that Morrison needed to be transported to the hospital, so she was placed on a stretcher, and placed in the back of the ambulance.

87. Once in the back of the ambulance, Morrison committed a battery upon Paramedic Nicholas Steryou

88. Morrison continued to swing her arms and struck the EMS official again.

89. Morrison was further detained by officers of the Palm Beach Gardens Police Department for striking an official.

Counts:

I.    FIRST CAUSE OF ACTION: BATTERY

90. Paragraphs 1 through 89 are incorporated herein.

91. Defendant intended to cause contact with Plaintiff's person, with the knowledge that this contact was unwanted.

92. Plaintiff did not consent to defendant's act.

93. As a direct and proximate result of Defendants' conduct, Plaintiff suffered emotional distress and a laceration to her forehead.

94. Plaintiff has also suffered extreme mental anguish due to being exposed while undressed and suffering symptoms of her Crohn's Disease.

95. These injuries have caused plaintiff to suffer general damages in to be determined.

96. As a direct and proximate result of Defendants' conduct, Plaintiff was required to obtain medical services and treatment in the amount of approximately $600,000.

97. As a further direct and proximate result of defendant's conduct, and the stress caused by that conduct the plaintiff was hospitalized 3 times and suffered 2 surgeries 3 months after the incident. unable to work for a period of NA. [days/weeks/months] and, accordingly, lost wages in the amount of NA.

II.    SECOND CAUSE OF ACTION: INTRUSION OF PRIVACY

98. Plaintiff incorporates by reference paragraphs 1-89 inclusive, and paragraphs 89-98, inclusive, of the First Cause of Action as if fully set forth.

99. In Florida, the tort of intrusion has three elements: (1) there must be a private quarter; (2) there must be some physical or electronic intrusion into that private quarter; and (3) the intrusion must be highly offensive to a reasonable person. In considering the third prong, Florida courts have looked to claims of intentional infliction of emotional distress. Thus, to support a claim for intrusion, the underlying conduct must be "so outrageous in character," and "so extreme in danger," as to "go beyond all possible bounds of decency."

100. Morrison was in a private stall in the women's restroom at the Dirty Martini.

101. Dirty Martini staff and Defendants Steryou and Hiyashi entered the stall in spite of the express requests from Morrison that they not do so.

102. Morrison was still flushing the toilet and in the middle of private activities in the privacy of the bathroom stall.

103. Morrison had her pants around her ankles when an EMT climbed over the wall of the stall.

104. Both the Interoffice Memorandum and Ambulance Report state that Morrison had blood and feces on her pants, which is consistent with her statements that her Crohn's Disease prevented her from being able to exit the stall of her own accord, fully dressed, at the time that the Dirty Martini staff and PBGPD personnel insisted that she open the door and give them access to her person.

105. Being exposed in front of strangers with her pants around her ankles and feces and blood on her clothing, severely distressed Morrison.

106. Men entered the restroom stall where Morrison had an expectation of privacy while she was undressed so as to create a sense of danger and panic for her and to exceed bounds of decency.

III. THIRD CAUSE OF ACTION: ASSAULT

107. Plaintiff incorporates by reference paragraphs 1-93 inclusive, and paragraphs 89-98, inclusive, of the First Cause of Action, and paragraphs 98-106 as if fully set forth.

108. Defendants intended to cause and did cause Plaintiff to suffer apprehension of an immediate harmful contact.

109. Plaintiff could hear unidentified men enter the women's restroom and ask other women to leave the restroom.

110. Plaintiff was frantically trying to rush and clean herself up, knowing that at any moment, she would be asked to comply as well.

111. Plaintiff feared being forced to leave the restroom.

112. Once PBGPD approached her stall, Plaintiff feared she had no choice in leaving the stall once an official climbed over the wall of her stall.

113. Plaintiff pushed against the stall door to prevent any others from gaining access to her stall.

114. Plaintiff feared further exposure and physical removal from the stall, considering the efforts Defendants made to gain access to her.


WHEREFORE, Plaintiff demands judgment against Defendants, as follows:

115. General damages in the amount of approximately $2000 ;

116. Medical and related expenses in the amount of approximately $600,000 ;

117. Past and future lost earnings in the amount of  to be determined;

118. Impairment of earning capacity in the amount of  to be determined;

119. Punitive damages; to be determined

120. Costs of this action; to be determined

121. Any other and further relief that the court considers proper.

## IV. FOURTH CAUSE OF ACTION-EXCESSIVE FORCE-CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. § 1983

122. Plaintiff incorporates by reference paragraphs 1-89 inclusive, as if fully set forth.

123. The Fourth Amendment prohibits the unreasonable use of force by a law enforcement officer when he has the lawful authority to seize an individual.

124. Assuming Defendant Hayashi had the lawful authority to seize Morrison, the force he used in doing so was clearly excessive.

125. Defendant Hayashi used his authority against Morrison when she posed no threat to the Defendants or to the public.

126. The use of force by Defendant Hayashi was blatantly excessive and deprived Morrison of her Fourth Amendment right to be free from force that was excessive under the circumstances.

127. Defendant Hayashi could have taken Morrison into custody without excessive or potentially deadly force and without causing Morrison emotional or physical injuries.

128. Defendant Hayashi's conduct was deliberately indifferent to Morrison's clearly established rights.

129. As a direct, proximate and foreseeable result of the acts and omissions of Defendant Hayashi, Morrison was harmed and she has in the past and will in the future suffer the following damages:

    a.  mental pain and suffering

    b.  all damages allowable under 42 U.S.C. § 1983, Federal Law, and Florida Law.

WHEREFORE, Plaintiffs pray that this Honorable Court grant the following relief on  Plaintiffs' civil right claim for excessive force brought pursuant to 42 U.S.C. § 1983 and § 1988:

A.    A Judgment for compensatory damages against Defendant to be determined

B.    Punitive damages against Defendant to be determined.

C.    Judgment for attorney's fees pursuant to 42 U.S.C. § 1988, together with the costs and expenses of this civil action;

D.    A trial by jury on all issues so triable; and

E.    Such other and further relief that this Court may deem just, proper and appropriate.

## V. FIFTH CAUSE OF ACTION: DEFENDANT CITY OF PALM BEACH GARDENS' STATE LAW CLAIM FOR NEGLIGENCE

Plaintiff incorporates by reference paragraphs 1-89 inclusive.

At all times, each Defendant owed Morrison the duty to act with due care or reasonable

false arrest/imprisonment care in the execution and enforcement of any right, law, or legal obligation.

These general duties of reasonable care and due care owed to Morrison by all Defendants include but are not limited to the following specific obligations:

a)      To refrain from seizing, detaining, or arresting Morrison without first having probable cause or legal authority to do so;

b)      To refrain from using excessive and/or unreasonable force against Morrison;

c)      To refrain from unreasonably creating the situation where force is used;

d)      To refrain from abusing their authority granted them by law;

e)      To use tactics and force appropriate for a disabled, emotionally and/or mentally disturbed person.

19

f)     To refrain from violating Morrison"s rights guaranteed by the United States

Constitutions, as set forth above, and as otherwise protected by law.

Defendant Hayashi, through his acts and omissions, breached each and every one

of the aforementioned duties owed to Morrison.

Defendant Steryou, through his acts and omissions, breached each and every one of

the aforementioned duties owed to Morrison.

Defendant, City of Palm Beach Gardens, is responsible for the negligence

committed by Defendants Steryou and Hayashi, in that the negligent acts were

committed in the course and scope of Defendants Steryou and Hayashi's

employment with Defendant, City of Palm Beach Gardens, such that respondeat

superior applies to this action.

As a direct, proximate and foreseeable result of the acts and omissions of the

Defendants, Morrison was injured physically and emotionally and the Plaintiff

have in the past and will in the future suffer the following damages:

WHEREFORE, the Plaintiff demands judgment against the Defendants for

damages in a sum in excess of ten million dollars, together with costs of this suit,

and any other relief this

Court deems proper, and demands a trial by jury on all issues so triable.

a.      All damages allowable under 42 U.S.C. § 1983, Federal Law, and Florida

Law.

WHEREFORE, Plaintiffs' pray that this Honorable Court grant the following relief

on Plaintiffs' civil right claim for excessive force brought pursuant to 42 U.S.C. §

1983 and § 1988:

A.      A Judgment for compensatory damages against Defendant to be determine;

B.      Punitive damages against Defendant to be determined.

C.      Judgment for attorney's fees pursuant to 42 U.S.C. § 1988, together with the

costs and expenses of this civil action;

D.      A trial by jury on all issues so triable; and

E.      Such other and further relief that this Court may deem just, proper and

appropriate.

COUNT X-DEFENDANT CITY OF PALM BEACH GARDENS §1983

MONELL CLAIM

Morrison was deprived of at least the following rights federal rights guaranteed

under the United States Constitution:

a.      The right not to be deprived of life, liberty, or property without Due Process

of Law;

21

b.     The right to be free from unreasonable searches and/or seizures, up to and including death;

c.     The right to enjoy civil and statutory rights.

Defendant City of Palm Beach Gardens developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of citizens it officers came into contact with.

It was the policy and or custom of the City of Palm Beach Gardens to inadequately and improperly investigate citizen complaints of police misconduct.

It was the policy and or custom of the City of Palm Beach Gardens to ignore, tolerate or inadequately discipline its officers when acts of misconduct occurred.

**DATED:**
10-29-18

**(Signature)**

VERIFICATION

I, Maryann Morrison, am a Plaintiff in the above-entitled action. I have read the foregoing *complaint* and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this

declaration was executed at Palm Beach Gardens, Florida.


DATED: *10-29-18*   *M. Morrison*

**(Signature)**


Under Federal Rule of Civil Procedure 11, by signing below, I certify to the

best of my knowledge, information, and belief that this complaint: (1) is not being

presented for an improper purpose, such as to harass, cause unnecessary delay, or

needlessly increase the cost of litigation; (2) is supported by existing law or by a

nonfrivolous argument for extending, modifying, or reversing existing law; (3) the

factual contentions have evidentiary support or, if specifically so identified, will

likely have evidentiary support after a reasonable opportunity for further

investigation or discovery; and (4) the complaint otherwise complies with the

requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: *10-29-18*

Signature of Plaintiff: *M. Morrison*

Printed Name of Plaintiff: Mary Ann Morrison

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the complaint has been served upon the parties on the 29th of October 2018 at City Hall; 10500 N Military Trl., Palm Beach Gardens, FL 33410

Signature of Plaintiff: *M. Morrison*

Printed Name of Plaintiff: Maryann Morrison
2805 Veronia Dr. Unit 107
Palm Beach Gardens, FL 33410

## **MEMORANDUM OF LAW SUPPORTING COMPLAINT**

Section 1983 provides a private cause of action for a government's unconstitutional actions. *Monell v. N.Y.C. Dep't of Social Servs.,* 436 U.S. 658, 690 (1978). A plaintiff asserting a section 1983 claim must show that the governing body itself caused his or her injury. *McDowell v. Brown,* 392 F.3d 1283, 1289 (11th Cir. 2004). Specifically, to state a claim against a government agency under section 1983, the plaintiff must show: "(1) that his constitutional rights were violated; (2) that the [government] had a custom or policy that constituted a deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Id.* (citing *City of Canton v. Harris,* 489 U.S. 378, 385 (1989)). "Stated differently, a local government agency is liable for a civil rights violation `when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Anderson v. Moore,* 2016 WL 4369543, at *8 (M.D. Fla. Aug. 16, 2016) (quoting *Monell,* 436 U.S. at 694).

Mary Ann Morrison's constitutional rights were violated when emergency personnel entered the club bathroom stall where she had an expectation of a right to privacy.

"Under the ADA[,] . . . a discrimination claim based on an arrest situation usually arises in two different situations: (1) when police wrongfully arrest someone by mistaking his disability for criminal conduct, and (2) when police properly investigate and arrest someone with a disability for a crime unrelated to the disability and then fail to reasonably accommodate the disability in the course of the investigation or arrest." Bircoll v. Miami-Dade County, 410 F. Supp. 2d 1280 (S.D. Fla. 2006) aff'd, 480 F.3d 1072(citing Gohier v. Enright, 186 F.3d 1216, 1220-21 (10th Cir. 1999)).

It is by now clear that a person who challenges the constitutionality of a search must demonstrate that he possesses a legitimate expectation of privacy in the premises searched or the items seized. See Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); United States v. Rackley, 742 F.2d 1266 (11th Cir.1984). As the United States Court of Appeals for the Eleventh Circuit observed in Rackley, 742 F.2d at 1270: "A defendant's fourth amendment rights are violated only when the challenged conduct invades that party's legitimate expectation of privacy

rather than the expectation of privacy of a third party." *See also* <u>*United States v. Torres*, 705 F.2d 1287, 1291-92 (11th Cir.),</u> *vacated on other grounds,* <u>718 F.2d 998 (11th Cir. 1983)</u>.

Generally, Florida law permits a plaintiff to recover against a governmental entity for the tortious acts of its employees based on a theory of vicarious liability. See Fla. Stat. § 768.28 (governing the State of Florida and its subdivisions' waiver of sovereign immunity from tort liability); <u>Laster v. City of Tampa Police Dep't, 575 Fed. Appx. 869, 872 (11th Cir. 2014)</u>; Schober v. Town of Fort Myers Beach, Fla., 2014 WL 6469881, at *7 n.5 (M.D. Fla. Nov. 17, 2014). To prevail on a theory of vicarious liability against a municipality under Fla. Stat. § 768.28, a plaintiff must show liability on the part of the municipality's employee. See <u>Laster, 575 Fed. Appx. at 873</u> ("To prevail on a theory of vicarious liability against the City under Fla. Stat. § 768.28, [the plaintiff] had to show liability on the part of . . . the City's employee.") (citing <u>Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498, 1500-01 (11th Cir. 1990)</u>).

In *Joseph v. Bailum*, Case No. 16-cv-81176-BLOOM/Valle. (S.D. FL 2017), Plaintiff filed

suit against Defendants and Deputies Davis and Bailum alleging claims for battery,

violations of 42 U.S.C. § 1983, malicious prosecution, negligence, false arrest and

false imprisonment, and violation of Title II of the Americans with Disabilities

Act, 42 U.S.C. § 12131 *et seq.* ("ADA"), because on the morning of July 5, 2012,

Mr. Joseph, who had been newly diagnosed with epilepsy after suffering his first

grand mal seizure on June 6, 2012, underwent another grand mal seizure while at

the home of his sister, Alicia Exil ("Mrs. Exil"). ECF No. [45] at ¶¶ 15, 18. The

following transpired:

Mrs. Exil, who spoke only "a little English with a very heavy Creole accent[,]"

called 911 seeking medical help. *Id.* at ¶ 18. Mrs. Exil told the 911 operator, Ms.

Gregory, that Mr. Joseph was "sick" and attempted to describe to her the symptoms

Mr. Joseph was experiencing. *Id.* at ¶ 20. Mr. Joseph's "eyes were repeatedly

blinking, he was profusely sweating, and he was having convulsions and jerking

movements." *Id.* Mrs. Exil asked Ms. Gregory for "help" and "repeatedly stated

that her brother [] was `sick.'" *Id.* Ultimately, Mrs. Exil was "unable to properly

describe" in English to Ms. Gregory, who did not speak Creole, Mr. Joseph's

medical condition. *Id.* at ¶ 21. Ms. Gregory did not seek out or find another 911

operator who did speak or understand Creole or French. *Id.* Ms. Gregory

"repeatedly asked" Mrs. Exil if Mr. Joseph "was drunk or had used or had smoked

drugs," to which Mrs. Exil responded with a "definitive `no.'"[11] *Id.* at ¶ 23. Ms.

Gregory informed Mrs. Exil that she would send "help" to Mrs. Exil's house. *Id.* at

24. At no time did Mrs. Exil request police intervention. *Id.* at ¶ 22. Ms. Gregory

did not send an ambulance to Mrs. Exil's house, but instead sent two deputies from

PBSO—Deputy Davis and Deputy Bailum—"by falsely reporting that there was a

violent domestic disturbance in progress at Mrs. Exils' [sic] home." *Id.* at ¶ 25. Ms.

Gregory "falsely advised the PBSO dispatch office that [Mr. Joseph] was verbally

abusive with . . . Mrs. Exil, threatened suicide, and posed a threat or danger to

everyone in the Exil home[.]" *Id.* at ¶ 28. Mrs. Exil directed Deputy Davis to Mr.

Joseph and expressly told him that Mr. Joseph "was an `epileptic' and was `sick.'"

*Id.* When asked by Deputy Davis if Mr. Joseph was drunk or had smoked or used

drugs, Mrs. Exil responded with a "definitive `no'" and "stated again that [Mr.]

Joseph was an `epileptic' and was `sick.'" *Id.* at ¶ 30. At no time did Mrs. Exil

indicate to Deputy Davis that Mr. Joseph posed a threat or danger to himself or

anyone else in her home. *Id.* Deputy Davis proceeded to "shout loud verbal

commands" in English to Mr. Joseph, who, with "rigid or tense muscles[,]"

continued to sweat profusely and blink his eyes repeatedly. *Id.* at ¶¶ 31-32. Mr.

Joseph, still undergoing an epileptic grand mal seizure, was "incapable, by reason of his disability, of responding to" Deputy Davis' commands. *Id.* at ¶ 33. Deputy Davis then placed Mr. Joseph under arrest for his "failure to obey" the commands. *Id.* at ¶ 34. At this point, Deputy Davis then tried "to handcuff [Mr.] Joseph and physically grabb[ed] him." *Id.* at ¶ 35. In doing so, Deputy Davis "was able to grab hold of and handcuff one of [Mr.] Joseph's hands." *Id.* at ¶ 36. Due to "involuntary teeth clenching caused by [the] epileptic seizure activity," Mr. Joseph then "involuntarily bit" Deputy Davis' right forearm as Deputy Davis attempted to place the handcuff on Mr. Joseph's second hand, which was near Mr. Joseph's mouth. *Id.* By this point, Deputy Bailum had arrived to Mrs. Exil's house, and almost immediately thereafter "[Mr.] Joseph was beset upon by both [deputies] who tased [Mr.] Joseph five (5) different times." *Id.* at ¶ 37. At one point Deputy Bailum "jumped on top of" Mr. Joseph and "ramm[ed] his taser weapon directly onto [Mr.] Joseph's lower abdomen and fir[ed] the same." *Id.* at ¶ 39. Mr. Joseph suffered an open wound on his lower abdomen as a result of Deputy Bailum's actions. *Id.* "At some point during the tasing sequence, [Deputies] Davis and Bailum both upholstered their service handguns and pointed [them] at [Mr.] Joseph and threatened to shoot him." *Id.* at ¶ 41. Mr. Joseph "ended up prone and semi-conscious" in the front lawn of Mrs. Exil's house. *Id.* at ¶ 40. Once subdued,

Mr. Joseph was treated for his wounds at the scene by an ambulance crew summoned by the PBSO deputies and was thereafter transported to the hospital. *Id.*

Deputies Davis and Bailum charged Mr. Joseph with two felonies — battery on a law enforcement officer and resisting arrest with violence. *Id.* at ¶ 44.

Based on these factual allegations, Mr. Joseph filed suit on June 30, 2016, asserting thirteen claims for relief in his initial Complaint, ECF No. [1], including: battery, excessive force under 42 U.S.C. § 1983, and malicious prosecution against Deputy Davis (Counts I-III); battery and excessive force under 42 U.S.C. § 1983 against Deputy Bailum (Counts IV-V); negligence against Ms. Gregory (Count VI); negligence against Sheriff Bradshaw (Count VII); false arrest/imprisonment against Deputy Davis (Count VIII); false arrest/imprisonment against Deputy Bailum (Counts IX-X); unconstitutional policy, custom, and usage under 42 U.S.C. § 1983 against Sheriff Bradshaw (Count XI); and violations of the ADA against Sheriff Bradshaw (Counts XII-XIII).

The Court found that the ADA claims asserted by Mr. Joseph are sufficiently pled to the extent that they are based on a wrongful arrest theory, explaining that the initial Complaint "sufficiently allege[d] a causal link between Mr. Joseph's arrest and his disability." ECF No. [43] at 24.

Wherefore, Maryann Morrison seeks relief from the actions taken by Palm Beach

Gardens Police and Fire Departments that resulted in an intrusion of her privacy,

battery, and false arrest.