**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF FLORIDA**

FILED BY _MCC_ D.C.

JUL 12 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

Maryann Morrison,                              **Case No.:** _9:18-CV-81473-DMM_

Plaintiff

v.                                                       **JURY TRIAL REQUESTED**

City of Palm Beach Gardens,

Maria G. Marino, Mayor of City of Palm Beach Gardens

Defendant

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**

       **COMES NOW**, Plaintiff, Maryann Morrison, and hereby sues the City of Palm Beach Gardens for the actions taken by the Palm Beach Gardens Police and Fire Departments, stating as follows:

**PRELIMINARY STATEMENT**

1. This is a civil rights action in which the Plaintiff Maryann Morrison seeks relief from this Court for the battery of Morrison and for Defendants' violation of Morrison's civil rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, malicious prosecution, negligence, false arrest and false imprisonment, intrusion of privacy, conspiracy to carry out a false arrest, and violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq. ("ADA").

2. At all times material hereto, Maryann Morrison (hereinafter "Plaintiff") was and is a resident of Palm Beach County, Florida.

1

3. At all times material hereto, Defendant, Palm Beach Gardens Police Department (hereinafter "PBGPD") was a city police department, located at 10500 North Military Trail, Palm Beach Gardens, FL 33410.

4. At all times material hereto, Defendant, Palm Beach Gardens Emergency Medical Services, Station 1, was part of the Palm Beach Gardens Fire Department, and located at 4425 Burns Road, Palm Beach Gardens, FL 33410.

5. This is an action for damages in excess of Fifteen Thousand Dollars ($15,000.00) arising from a battery in violation of Florida law, negligence resulting in the wrongful arrest and detainment of Morrison, a violation of the Fourth and Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983 and 42 U.S.C. 12132, 12182, 12203 (Americans with Disabilities Act of 1990, ADA, and a claim for attorney's fees pursuant to 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

6. Venue for this action is properly laid in the United States District Court for the Middle District of Florida, pursuant to Florida Statutes § 47.011 in that:

(a) The causes of action alleged in this Complaint occurred in Palm Beach County, Florida;

(b) Plaintiff is a resident of Palm Beach County, Florida;

7. This Court has jurisdiction pursuant to Florida Statutes § 26.012, 34.01 ( c ); and 28 USC§ 1343.

8. This is a Civil Rights complaint for declaratory, injunctive and other appropriate relief brought by Plaintiff, Maryann Morrison, a United States citizen, appearing pro se.

9. The Plaintiff brings this complaint for violations of her individual and associational rights under the Fourth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. 1983, 1985 and 1986; 42 U.S.C. 12132, 12182, 12203 (Americans with Disabilities Act of 1990, ADA).

10. The Plaintiff alleges that the Defendants acted under the color of state law when they falsely arrested and imprisoned her and caused her to be battered in the course of her arrest, pursuant to Section 1983 which allows defendants

2

to be found liable when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia."

42 U.S.C. § 1983.

11. The Plaintiff is a qualified individual with disabilities, pursuant to the Americans with Disabilities Act of 1990.
12. The Plaintiff was subjected to intrusion of privacy, battery, and false arrest on November 1, 2014.
13. On October 31, 2017, Plaintiff delivered a Notice of Claim to the Department of Financial Services. See Exhibit A: Notice of Claim.

## FACTS APPLICABLE TO ALL COUNTS

14. On October 31, 2014, the Plaintiff, and her three brothers, DamienTommy, and Leslie Gilliams, went to the Dirty Martini, a night club located at 11701 Lake Victoria Gardens Ave, Palm Beach Gardens, FL 33410, to celebrate Halloween.

15. Plaintiff and her brothers had a few drinks and they danced.
16. The Plaintiff has Crohn's Disease, which symptoms include abdominal pain and severe diarrhea.
17. The Plaintiff was inside of the club amidst a large group of people when she began to feel symptomatic.
18. Plaintiff told her brother Tommy that she needed to go to the bathroom and he went to the bathroom as well.
19. He used the restroom and when he came out, Morrison was still waiting outside in the hall to enter the restroom.
20. Morrison eventually moved up in the line into the women's restroom, but she could not wait any longer so she cut the line.
21. Morrison struggled to unbutton her jeans quickly, but it was too late.
22. Morrison was very upset and frustrated with herself because she was stuck in the stall trying to clean herself up and women were waiting outside upset that she had cut the line.
23. Morrison was wearing white jeans, which made matters worse.

24. Morrison kept trying to clean herself up and she had to put her head in her hands on several occasions while still going to the bathroom because Crohn's Disease comes in spasms.

25. Morrison is not sure how long she was in the bathroom but she then started to hear men's voices.

26. The men were asking the other women to leave out of the bathroom.

27. Morrison started to panic because at any minute they would reach her stall.

28. Morrison frantically flushed so the toilet would not clog and continued to clean up with toilet paper. Morrison believes the sounds the EMS Personnel and officer Hayashi heard were interpreted as an indication that she was attempting to flush illegal substances down the toilet.

29. The men then ordered Morrison to exit the stall.

30. Morrison refused, telling them that she was using the restroom.

31. This exchange continued for a few minutes and then Morrison saw a man come over the stall to unlock the door.

32. Morrison was shocked that someone would enter the stall while she was still undressed and not ready to be exposed.

33. Morrison cursed and tried to get up to hold the door closed since there were men on the other side and Morrison's pants were still down since she had still been using the toilet.

34. The men on the other side pushed the door open hitting Morrison in the face.

35. Morrison fell backward on to the toilet with her pants still down.

36. Morrison stated that she did not want to go to the emergency room.

37. Morrison also stated that she did not need to be treated by the EMS.

38. She was extremely embarrassed and then disoriented after being hit in the head.

39. Morrison did not want any of the men touching her, especially the man that forced his way into her stall.

40. Morrison worried about the cost of a trip to the emergency room.

41. Morrison refused to get on the gurney and pushed the paramedic's hands away from her since she had told him repeatedly not to touch her.

42. Morrison recalls clearly expressing that she has Crohn's disease and that was why she had lost control of her bowels and had an accident while still dressed.

4

43. Morrison also explained that was why there was blood present as well.

44. Morrison said that she just wanted to clean herself up, find her brothers, and go home.

45. Morrison was forced onto the gurney, and wheeled out of the club.

46. Morrison's next memory was being processed in the jail.

47. Morrison heard her brother Leslie repeatedly ask for his lawyer.

48. Morrison asked multiple times why was she being arrested.

49. She was told "you know why."

50. Even during the next morning as she was processed for release, Morrison asked why she was arrested and was once again told, "You know why."

51. In the Ambulance Report, dated November 1, 2014, OCA 14-005411, the narrative describes R65 responding to an overdose/intoxication call.

52. The Report stated that PBGPD disclosed that they were alerted while on a special detail that a person inside the bathroom appeared to be "drunk and passed out." See attached Ambulance Report.

53. PBGPD stated that "the patient was in the bathroom stall with her pants around her ankles and kept flushing the toilet".

54. The report states that "they were unable to get the patient out of the bathroom" and "after gaining access to the patient the patient states that there was nothing wrong" and "that she had 'three drinks' this evening."

55. Pursuant to the Report, Morrison denied any weakness, dizziness, trauma, illness or injury.

56. Morrison was allegedly found sitting upright on a toilet in distress with a visible laceration to her eyebrow and visible blood and feces on her pants.

57. R65 crew reached over the top of the bathroom stall and unlocked the door because Morrison would not follow commands and open the door.

58. Morrison's brother allegedly interfered with R65 crew who tried to load Morrison in the back of the ambulance.

59. After Morrison was loaded in the back of the ambulance, according to the Report, she "started to get combative 'swinging and hitting' Firemedic Nickolas Steryou.

60. Morrison was apparently told to stop swinging but she continued to do so.

61. PBGPD restrained Morrison to the stretcher with handcuffs and placed her under arrest.

62. Morrison's brother appeared again wishing to enter the ER with his sister.

63. PBGPD was contacted again because Morrison's brother was allegedly hindering patient care.

64. Morrison's brother was apprehended and Morrison was turned over to the ER nurse and doctor.

65. Major Christopher Barca created an Interoffice Memorandum written to Chief Stephen Stepp on March 4, 2016, in response to Damien Gilliams Complaint referencing Officer Hiyashi, Case number 14-005411.

66. The complaint regarded Morrison's brother, Damien Gilliams access to his sister while she was being treated outside of the Dirty Martini.

67. The memorandum addressed this complaint in the context of the call that was allegedly made by Dirty Martini staff regarding Morrison.

68. Major Barca stated the following regarding the events that occurred late October 31, 2014 into early morning November 2, 2014:

69. Security personnel at the Dirty Martini apparently called the Palm Beach Gardens Police because they saw the Plaintiff stumbling around the bar.

70. Officer Hayashi responded to the location and reported that he observed the Plaintiff who appeared to him to be disoriented to her surroundings.

71. The Plaintiff also had blood on her clothing and a laceration above her right eye.

72. The Plaintiff was unable to articulate what had caused the laceration and reportedly told Officer Hayashi nothing had occurred.

73. The Plaintiff slurred her speech and attempted to walk away from the officer, still disoriented.

74. In the Interoffice Memorandum to Chief Stephen Stepp and from Major Christopher Barca on March 4, 2016 (), Officer Hayashi "knew that the stumbling and the uncooperative actions of Ms. Morrison could possibly be indicative of a serious head injury" and he did not know if she had been the victim of a battery or if a possible assailant was still in the area.

75. According to the Interoffice Memorandum, the officer feared that the Plaintiff was suffering from a serious medical condition and because she had spent an extended amount of time in the bathroom, the officer called EMS to assess her condition.

76. EMS eventually reached the decision that they would reach over the partition and unlock the stall and force the door open so that the Plaintiff could be treated, according to the supplemental report.

77. Plaintiff insists this interaction never occurred with officer Hayashi and is corroborated by the Ambulance Record 1st sentence; PBGPD states they were alerted while on special detail (officer Hayashi) that there was a person inside of the bathroom that appeared to be "drunk and passed out" This sentence would already put the Plaintiff in the restroom before officer Hayashi arrived at the nightclub.

78. Plaintiff cooperated with EMS while they did the initial patient assessment.

79. Plaintiff was oriented and obeyed commands. Plaintiff was given AAOx3 which references the Plaintiff being awake alert and oriented on pages 2 and 3

Attached see Exhibits A,B,C,D
    A) Ambulance Record
    B) Case Supplemental Report
    C) Interoffice Memorandum
    D) Ambulance Record

Counts:

I. FIRST CAUSE OF ACTION: BATTERY

80.     Paragraphs 1 through 79 are incorporated herein.

81.     Officer Hayashi and EMS personnel, Nicolas Steryou and Jerry Sutter

82.     intended to cause contact with Plaintiff's person, with the knowledge that this contact was unwanted.

83.     Plaintiff did not consent Officer Hayashi and EMS personnel's actions.

84.     As a direct and proximate result of officer Hayashi and EMS personnel, Plaintiff suffered emotional distress and a laceration to her forehead.

85.     Plaintiff has also suffered extreme mental anguish due to being exposed while undressed, sitting on a toilet and suffering symptoms of her Crohn's Disease.

86.     These injuries have caused plaintiff to suffer general damages, pain and suffering in the amount allowable by law in the amount of $300,000

2.   SECOND CAUSE OF ACTION INTRUSION OF PRIVACY

87.   Plaintiff incorporates by reference paragraphs 1-79 as if fully set forth
      herein.

88.   In Florida, the tort of intrusion has three elements: (1) there must be a
private quarter; (2) there must be some physical or electronic intrusion into that
private quarter; and (3) the intrusion must be highly offensive to a reasonable
person. In considering the third prong, Florida courts have looked to claims of
intentional infliction of emotional distress. Thus, to support a claim for intrusion,
the underlying conduct must be "so outrageous in character," and "so extreme in
danger," as to "go beyond all possible bounds of decency."


89.   Morrison was in a private stall in the women's restroom at the Dirty Martini.
EMS personnel Nicolas Steryou, Jerry Sutter and officer Hiyashi entered the stall
in spite of the express requests from Morrison that they not do so.

90.   Morrison was still flushing the toilet and in the middle of private activities in

91.   the privacy of the bathroom stall.

92.   Morrison had her pants around her ankles when an EMT reached over the
partition of the stall

93.   Both the Interoffice Memorandum and Ambulance Report state that
Morrison had blood and feces on her pants, which is consistent with her statements
that her Crohn's Disease prevented her from being able to exit the stall of her own
accord, fully dressed, at the time that EMS personnel insisted that she open the
door and give them access to her person.

94.   Being exposed in front of strangers with her pants around her ankles and
feces and blood on her clothing, severely distressed Morrison.

95.   Men entered the restroom stall where Morrison had an expectation of
privacy while she was undressed so as to create a sense of danger and panic for her
and to exceed bounds of decency.

III. THIRD CAUSE OF ACTION: ASSAULT

96.   Plaintiff incorporates by reference paragraphs 1-79 as if fully set forth
herein.

97.   Officer Hayashi and EMS personnel did cause Plaintiff to suffer
apprehension of an immediate harmful contact.

98.    Plaintiff could hear unidentified men enter the women's restroom and ask other women to leave the restroom.

99.    Plaintiff was frantically trying to rush and clean herself up, knowing that at any moment, she would be asked to comply as well.

100.   Plaintiff feared being forced to leave the restroom.

101.   Once PBGPD approached her stall, Plaintiff feared she had no choice in leaving the stall once an official climbed over the wall of her stall.

102.   Plaintiff pushed against the stall door to prevent any others from gaining access to her stall.

103.   Plaintiff feared further exposure and physical removal from the stall, considering the efforts Officer Hayashi and EMS personnel made to gain access to her.

WHEREFORE, Plaintiff demands judgment against Defendant, as follows:

104. General damages for pain and suffering in the amount allowable by law $300,000.

IV. FOURTH CAUSE OF ACTION-EXCESSIVE FORCE-CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. § 1983

105. Plaintiff incorporates by reference paragraphs 1-79 inclusive, as if fully set forth.

106. The Fourth Amendment prohibits the unreasonable use of force by a law enforcement officer when he has the lawful authority to seize an individual.

107. Assuming Officer Hiyashi and EMS personnel had the lawful authority to seize Morrison, the force they used in doing so was clearly excessive.

108. Officer Hiyashi and EMS personnel used Their authority against Morrison when she posed no threat to herself,  them or the public.

109. The use of force by Officer Hiyashi and EMS personnel was blatantly excessive and deprived Morrison of her Fourth Amendment right to be free from force that was excessive under the circumstances.

110. Officer Hiyashi could have taken Morrison into custody without excessive or potentially undue force and without causing Morrison emotional or physical injuries.

111. Officer Hiyashi's and EMS personnel's conduct was deliberately indifferent to Morrison's clearly established rights.

112. As a direct, proximate and foreseeable result of the acts and omissions of Officer Hiyashi and EMS personnel, Morrison was harmed and she has in the past and will in the future suffer PTSD the following damages:

   a. mental pain and suffering
   b. all damages allowable under 42 U.S.C. § 1983, Federal Law, and Florida Law.

WHEREFORE, Plaintiffs pray that this Honorable Court grant the following relief on Plaintiff's civil right claim for excessive force brought pursuant to 42 U.S.C. § 1983 and § 1988:

A. A Judgment for compensatory damages against Defendant $300,000.00

C. A trial by jury on all issues so triable; and

D. Such other and further relief that this Court may deem just, proper and appropriate.

## V. FIFTH CAUSE OF ACTION: DEFENDANT CITY OF PALM BEACH GARDENS' STATE LAW CLAIM FOR NEGLIGENCE

133. Plaintiff incorporates by reference paragraphs 1-79 inclusive.

114. At all times, the Officer Hayashi and EMS Personnel owed Morrison the duty to act with due care or reasonable false arrest/imprisonment care in the execution and enforcement of any right, law, or legal obligation.

115. These general duties of reasonable care and due care owed to Morrison by those employed by the City of Palm Beach Gardens to include but are not limited to the following specific obligations:

a) To refrain from seizing, detaining, or arresting Morrison without first having probable cause or legal authority to do so;

b) To refrain from using excessive and/or unreasonable force against Morrison;

c) To refrain from unreasonably creating the situation where force is used;

d) To refrain from abusing their authority granted them by law;

e) To use tactics and force appropriate for a disabled, emotionally and/or mentally disturbed person, and

f) To refrain from violating Morrison's rights guaranteed by the United States Constitutions, as set forth above, and as otherwise protected by law.

116. Officer Hiyashi and EMS personnel, through their acts and omissions, breached each and every one of the aforementioned duties owed to Morrison.

117. Officer  Steryou, through his acts and omissions, breached each and every one of the aforementioned duties owed to Morrison.

As a direct, proximate and foreseeable result of the acts and omissions of the Defendant, Morrison was injured physically and emotionally and the Plaintiffs have in the past and will in the future suffer the following damages: PTSD

WHEREFORE, the Plaintiffs demand judgment against the Defendant for damages in a sum allowable by law in the amount of $300,000.00

 together with costs of this suit, and any other relief this

Court deems proper, and demands a trial by jury on all issues so triable.

a. All damages allowable under 42 U.S.C. § 1983, Federal Law, and Florida Law.

WHEREFORE, Plaintiffs pray that this Honorable Court grant the following relief on Plaintiffs' civil right claim for excessive force brought pursuant to 42 U.S.C. § 1983 and § 1988:

A. A Judgment for compensatory damages against Defendant $300,000.00

C. costs and expenses of this civil action;

D. A trial by jury on all issues so triable; and

E. Such other and further relief that this Court may deem just, proper and appropriate.

COUNT X-DEFENDANT CITY OF PALM BEACH GARDENS §1983 MONELL CLAIM

118. Plaintiff incorporates by reference paragraphs 1-79 inclusive.

119. Morrison was deprived of at least the following rights federal rights guaranteed under the United States Constitution:

a. The right not to be deprived of life, liberty, or property without Due Process of Law;

b. The right to be free from unreasonable searches and/or seizures, up to and including death;

c. The right to enjoy civil and statutory rights.

120. Defendant City of Palm Beach Gardens developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of citizens it officers came into contact with.

121. It was the policy and or custom of the City of Palm Beach Gardens to inadequately and improperly investigate citizen complaints of police misconduct.

122. It was the policy and or custom of the City of Palm Beach Gardens to ignore, tolerate or inadequately discipline its officers when acts of misconduct occurred.

| DATED: <u>07/12/19</u> | *M. Morrison*, |
|---|---|
| | **(Signature)** |

VERIFICATION

I, Maryann Morrison, am a Plaintiff in the above-entitled action. I have read the foregoing *complaint* and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Palm Beach Gardens, Florida.

**DATED: <u>07/12/19</u>**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a

nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the

requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:07/12/19


Signature of Plaintiff: *M. Morrison*


Printed Name of Plaintiff: Maryann Morrison


## **CERTIFICATE OF SERVICE**


     I hereby certify that on the 12th day of July I  filed the foregoing document with the Clerk of Court. I further certify that I sent the foregoing document electronically by email to:

     Johnson, Anselmo, Murdoch, Burke Piper & Hochman P.A.

     Attorneys for Defendant

     2455 East Sunrise Blvd. Ste.1000

     Fort Lauderdale, FL 33340

     954/463-0100 telephone 954/463-2444 fax.

johnson@jambg.com/ young@jambg.com/
alexander@jambg.com/blanca@jambg.com

Signature of Plaintiff: _M. Morrison_

Printed Name of Plaintiff: Maryann Morrison

## **MEMORANDUM OF LAW SUPPORTING COMPLAINT**

Section 1983 provides a private cause of action for a government's unconstitutional actions. _Monell v. N.Y.C. Dep't of Social Servs._, 436 U.S. 658, 690 (1978). A plaintiff asserting a section 1983 claim must show that the governing body itself caused his or her injury. _McDowell v. Brown_, 392 F.3d 1283, 1289 (11th Cir. 2004). Specifically, to state a claim against a government agency under section 1983, the plaintiff must show: "(1) that his constitutional rights were violated; (2) that the [government] had a custom or policy that constituted a deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." _Id._ (citing _City of Canton v. Harris_, 489 U.S. 378, 385 (1989)). "Stated differently, a local government agency is liable for a civil rights violation `when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" _Anderson v. Moore_, 2016 WL 4369543, at *8 (M.D. Fla. Aug. 16, 2016) (quoting _Monell_, 436 U.S. at 694).

Mary Ann Morrison's constitutional rights were violated when emergency personnel entered the club bathroom stall where she had an expectation of a right to privacy.

15

"Under the ADA[,] . . . a discrimination claim based on an arrest situation usually arises in two different situations: (1) when police wrongfully arrest someone by mistaking his disability for criminal conduct, and (2) when police properly investigate and arrest someone with a disability for a crime unrelated to the disability and then fail to reasonably accommodate the disability in the course of the investigation or arrest." Bircoll v. Miami-Dade County, 410 F. Supp. 2d 1280 (S.D. Fla. 2006) aff'd, 480 F.3d 1072(citing Gohier v. Enright, 186 F.3d 1216, 1220-21 (10th Cir. 1999)).

It is by now clear that a person who challenges the constitutionality of a search must demonstrate that he possesses a legitimate expectation of privacy in the premises searched or the items seized. See *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. Rackley*, 742 F.2d 1266 (11th Cir.1984). As the United States Court of Appeals for the Eleventh Circuit observed in *Rackley*, 742 F.2d at 1270: "A defendant's fourth amendment rights are violated only when the challenged conduct invades that party's legitimate expectation of privacy rather than the expectation of privacy of a third party." *See also United States v. Torres*, 705 F.2d 1287, 1291-92 (11th Cir.), *vacated on other grounds*, 718 F.2d 998 (11th Cir. 1983).

*Generally, Florida law permits a plaintiff to recover against a governmental entity for the tortious acts of its employees based on a theory of vicarious liability. See Fla. Stat. § 768.28 (governing the State of Florida and its subdivisions' waiver of sovereign immunity from tort liability); <u>Laster v. City of Tampa Police Dep't, 575 Fed. Appx. 869, 872 (11th Cir. 2014)</u>; Schober v. Town of Fort Myers Beach, Fla., 2014 WL 6469881, at \*7 n.5 (M.D. Fla. Nov. 17, 2014). To prevail on a theory of vicarious liability against a municipality under Fla. Stat. § 768.28, a plaintiff must show liability on the part of the municipality's employee. See <u>Laster, 575 Fed. Appx. at 873</u> ("To prevail on a theory of vicarious liability against the City under Fla. Stat. § 768.28, [the plaintiff] had to show liability on the part of . . . the City's employee.") (citing <u>Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498, 1500-01 (11th Cir. 1990)</u>).*

In *Joseph v. Bailum*, <u>Case No. 16-cv-81176-BLOOM/Valle.</u> (S.D. FL 2017), Plaintiff filed suit against Defendants and Deputies Davis and Bailum alleging claims for battery, violations of 42 U.S.C. § 1983, malicious prosecution, negligence, false arrest and false imprisonment, and violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("ADA"), because on the morning of July 5, 2012, Mr. Joseph, who had been newly diagnosed with epilepsy after suffering his first grand mal seizure on June 6, 2012, underwent another grand mal seizure while at the home of his sister, Alicia Exil ("Mrs. Exil"). ECF No. [45] at ¶¶ 15, 18. The following transpired:

Mrs. Exil, who spoke only "a little English with a very heavy Creole accent[,]" called 911 seeking medical help. *Id.* at ¶ 18. Mrs. Exil told the 911 operator, Ms. Gregory, that Mr. Joseph was "sick" and attempted to describe to her the symptoms Mr. Joseph was experiencing. *Id.* at ¶ 20. Mr. Joseph's "eyes were repeatedly blinking, he was profusely sweating, and he was having convulsions and jerking movements." *Id.* Mrs. Exil asked Ms. Gregory for "help" and "repeatedly stated that her brother [] was `sick.'" *Id.* Ultimately, Mrs. Exil was "unable to properly describe" in English to Ms. Gregory, who did not speak Creole, Mr. Joseph's medical condition. *Id.* at ¶ 21. Ms. Gregory did not seek out or find another 911

17

operator who did speak or understand Creole or French. *Id.* Ms. Gregory
"repeatedly asked" Mrs. Exil if Mr. Joseph "was drunk or had used or had smoked
drugs," to which Mrs. Exil responded with a "definitive `no.'"[11] *Id.* at ¶ 23. Ms.
Gregory informed Mrs. Exil that she would send "help" to Mrs. Exil's house. *Id.* at
24. At no time did Mrs. Exil request police intervention. *Id.* at ¶ 22. Ms. Gregory
did not send an ambulance to Mrs. Exil's house, but instead sent two deputies from
PBSO—Deputy Davis and Deputy Bailum—"by falsely reporting that there was a
violent domestic disturbance in progress at Mrs. Exil's' [sic] home." *Id.* at ¶ 25. Ms.
Gregory "falsely advised the PBSO dispatch office that [Mr. Joseph] was verbally
abusive with . . . Mrs. Exil, threatened suicide, and posed a threat or danger to
everyone in the Exil home[.]" *Id.* at ¶ 28. Mrs. Exil directed Deputy Davis to Mr.
Joseph and expressly told him that Mr. Joseph "was an `epileptic' and was `sick.'"
*Id.* When asked by Deputy Davis if Mr. Joseph was drunk or had smoked or used
drugs, Mrs. Exil responded with a "definitive `no'" and "stated again that [Mr.]
Joseph was an `epileptic' and was `sick.'" *Id.* at ¶ 30. At no time did Mrs. Exil
indicate to Deputy Davis that Mr. Joseph posed a threat or danger to himself or
anyone else in her home. *Id.* Deputy Davis proceeded to "shout loud verbal
commands" in English to Mr. Joseph, who, with "rigid or tense muscles[,]"
continued to sweat profusely and blink his eyes repeatedly. *Id.* at ¶¶ 31-32. Mr.
Joseph, still undergoing an epileptic grand mal seizure, was "incapable, by reason
of his disability, of responding to" Deputy Davis' commands. *Id.* at ¶ 33. Deputy
Davis then placed Mr. Joseph under arrest for his "failure to obey" the commands.
*Id.* at ¶ 34. At this point, Deputy Davis then tried "to handcuff [Mr.] Joseph and
physically grabb[ed] him." *Id.* at ¶ 35. In doing so, Deputy Davis "was able to grab
hold of and handcuff one of [Mr.] Joseph's hands." *Id.* at ¶ 36. Due to "involuntary
teeth clenching caused by [the] epileptic seizure activity," Mr. Joseph then
"involuntarily bit" Deputy Davis' right forearm as Deputy Davis attempted to place
the handcuff on Mr. Joseph's second hand, which was near Mr. Joseph's mouth.
*Id.* By this point, Deputy Bailum had arrived to Mrs. Exil's house, and almost
immediately thereafter "[Mr.] Joseph was beset upon by both [deputies] who tased
[Mr.] Joseph five (5) different times." *Id.* at ¶ 37. At one point Deputy Bailum
"jumped on top of" Mr. Joseph and "ramm[ed] his taser weapon directly onto [Mr.]
Joseph's lower abdomen and fir[ed] the same." *Id.* at ¶ 39. Mr. Joseph suffered an
open wound on his lower abdomen as a result of Deputy Bailum's actions. *Id.* "At
some point during the tasing sequence, [Deputies] Davis and Bailum both

upholstered their service handguns and pointed [them] at [Mr.] Joseph and threatened to shoot him." *Id.* at ¶ 41. Mr. Joseph "ended up prone and semi-conscious" in the front lawn of Mrs. Exil's house. *Id.* at ¶ 40. Once subdued, Mr. Joseph was treated for his wounds at the scene by an ambulance crew summoned by the PBSO deputies and was thereafter transported to the hospital. *Id.*

Deputies Davis and Bailum charged Mr. Joseph with two felonies — battery on a law enforcement officer and resisting arrest with violence. *Id.* at ¶ 44.

Based on these factual allegations, Mr. Joseph filed suit on June 30, 2016, asserting thirteen claims for relief in his initial Complaint, ECF No. [1], including: battery, excessive force under 42 U.S.C. § 1983, and malicious prosecution against Deputy Davis (Counts I-III); battery and excessive force under 42 U.S.C. § 1983 against Deputy Bailum (Counts IV-V); negligence against Ms. Gregory (Count VI); negligence against Sheriff Bradshaw (Count VII); false arrest/imprisonment against Deputy Davis (Count VIII); false arrest/imprisonment against Deputy Bailum (Counts IX-X); unconstitutional policy, custom, and usage under 42 U.S.C. § 1983 against Sheriff Bradshaw (Count XI); and violations of the ADA against Sheriff Bradshaw (Counts XII-XIII).

The Court found that the ADA claims asserted by Mr. Joseph are sufficiently pled to the extent that they are based on a wrongful arrest theory, explaining that the initial Complaint "sufficiently allege[d] a causal link between Mr. Joseph's arrest and his disability." ECF No. [43] at 24.

Wherefore, Maryann Morrison seeks relief from the actions taken by Palm Beach Gardens Police and Fire Departments that resulted in an intrusion of her privacy, battery, and false arrest.

*Service*

Maryann Morrison
713 Layport Dr.
Sebastian Fl 32958

October 31, 2017

Certified Mail, Return Receipt Requested #: 7016 2710 0000 0278 4728

                     7016 2710 0000 0278 4735 City

                     7016 2710 0000 0278 4834 Martini

Florida Department of Financial Services
Attn; Risk Management Department
200 East Gaines Street,
Tallahassee, FL 32399-0300

Re: Maryann Morrison: NOTICE OF CLAIM
    Location of Accident: Dirty Martini Grille, LLC
                      11701 Lake Victoria Gardens Ave.
                      Palm Beach Gardens Fl. 33410

Date of Accident:    November 1st, 2014

Dirty Martini Grille, LLC
Registered Agent: Mash,E Cleve Mgr
4161 Hockory Drive
Palm Beach Gardens, Fl33418

FEI/EIN 27-2919319

City of Palm Beach Gardens
Police Department
Chief: Stephen J. Stepp
Officer: Hyashi

Fire Rescue Ems Division
Keith Bryer
10500 North Military Trail
Palm Beach Gardens, FL 33410

City Clerk: Patricia Snider
Mayor: Maria Marino

TO WHOM IT MAY CONCERN;

   Pursuant to Florida Statute 768.28, you are notified that Maryann Morrison intends to file a claim for money damages against the City of Palm Beach Gardens Palm Beach Gardens Community Police Department, Fire Rescue EMS Division, And Dirty Martini Grille LLC, Maryann Morrison will start the prosecuting this Claim until she retains an Attorney, all notices and other communications should be addressed to Maryann Morrison at 713 Layport Dr. Sebastian, FL 32958 Telephone 772-713-5071.

   This claim arises from an assault by City of Palm Beach Gardens Employees and Employee's of Dirty Martini Grille LLC which occurred the morning of November 1, 2014 at approximately 12:01 AM while Maryann Morrison was in the Ladies Restroom with an Emergency Issue.

   As a result of this accident Mrs. Morrison has incurred Injuries and Damages for which is claim is now being made. It is Mrs. Morrison's Position that this incident was caused by Agents and/or employees of the City of Palm Beach Gardens and the Business of the Dirty Martini Grille LLC while acting in the course and scope of their employment.

   Pursuant to the requirements mandated by Florida Statue Section 768.28 may this also serve as Notice of Demand for Compensation for Injury and Demand for the above reference claim.

Sincerely,
Maryann Morrison

```
==================================
              SEBASTIAN
            1290 MAIN ST
              SEBASTIAN
                 FL
             32958-9998
            1184750454
10/31/2017   (800)275-8777   4:43 PM
==================================
Product              Sale    Final
Description          Qty      Price

First-Class    1            $0.49
Mail
Letter
     (Domestic)
     (PALM BEACH GARDENS, FL 33410)
     (Weight:0 Lb 0.50 Oz)
     (Expected Delivery Date)
     (Thursday 11/02/2017)
Certified      1            $3.35
     (@@USPS Certified Mail #)
     (70162710000002784735)
Return         1            $2.75
Receipt
     (@@USPS Return Receipt #)
     (9590940232847196245825)
First-Class    1            $0.49
Mail
Letter
     (Domestic)
     (TALLAHASSEE, FL 32399)
     (Weight:0 Lb 0.50 Oz)
     (Expected Delivery Date)
     (Thursday 11/02/2017)
Certified      1            $3.35
     (@@USPS Certified Mail #)
     (70162710000002784728)
Return         1            $2.75
Receipt
     (@@USPS Return Receipt #)
     (9590940232847196245832)
First-Class    1            $0.49
Mail
Letter
     (Domestic)
     (PALM BEACH GARDENS, FL 33418)
     (Weight:0 Lb 0.50 Oz)
     (Expected Delivery Date)
     (Thursday 11/02/2017)
Certified      1            $3.35
     (@@USPS Certified Mail #)
     (70162710000002784834)
Return         1            $2.75
Receipt
     (@@USPS Return Receipt #)
     (9590940232847196245733)

Total                      $19.77

Debit Card Remit'd         $19.77
     (Card Name:Debit Card)
     (Account #:XXXXXXXXXXXX1726)
     (Approval #:      )
     (Transaction #:365)
     (Receipt #:015029)
     (Debit Ca        $19.77)
     (Cash Bac
```







**City of Palm Beach Gardens**
4425 Burns Road
PALM BEACH GARDENS, FL 33410
561-799-4300

**AMBULANCE RECORD**

21650543 (nsteryou)
Page 4 of 5

## Narrative

R65 responded to a overdose/intoxication call. Patient is a 48 Y/O F C/O none. PBGPD states that they were alerted while on a special detail that there was a person inside of the bathroom that appeared to be "drunk and passed out." PBGPD states that the patient was in the bathroom stall with her pants around her ankles and kept flushing the toilet. PBGPD states that they were unable to get the patient out of the bathroom. After gaining access to the patient the patient states that there was nothing wrong. Patient states that she had "three drinks" this evening. Patient denies loc,co, sob, n/v, h/a, weakness, dizziness, any trauma, illness, any injury.

Upon arrival found patient sitting upright on a toilet in apparent distress with a visible laceration to her eyebrow, and visible blood and feces on her pants. R65 crew had to climb over top of the bathroom stall and unlock the door because the patient would not follow commands and open the door.

BLS standard

See sequence chart for interventions. While trying to load patient in to the back of the rescue a person that identified himself as the patient's "brother" started to get in the way of loading the patient and hindering patient care. After patient was loaded in to the recuse the patient started to get combative "swinging and hitting" Firemedic N. Steryou, she was told to stop and the patient started hitting again. PBGPD restrained the patient to the stretcher with handcuffs and placed the patient under arrest. Patient was transported to Palm Beach Gardens Medical Center PRI/3. While unloading patient from the rescue the patient "brother" appeared again demanding that he was coming into the ER with use. Again PBGPD was contacted because the patient brother was hindering patient care, R65 was unable to enter the ER because of the brother blocking access and video taping in a patient area of the hospital. After PBGPD got control of the patients brother patient care was turned over to ER nurse and doctor with report..

## Image 1/1

I authorize any health care professional or entity to release all records or information pertaining to medical history or services to the Social Security Administration and/or Health Care Financing Administration, or its intermediaries or carrier, and/or private insurance company. I request direct payment of medical insurance benefits to Palm Beach Gardens Fire-Rescue. I personally guarantee payment (patient's signature only) to Palm Beach Gardens Fire-Rescue for all charges not covered by medical insurance benefits. I permit that a copy of this authorization shall be valid as the original.

I have received a copy of the Departmental Privacy Policy Notice.

*Note: A signature on the patient's behalf DOES NOT constitute acknowledgment of financial responsibility for services provided to the patient.*

## Signatures

|  | Medic #1 |
|---|---|

Steryou, Nickolas (EMT-P)     Suiter, Jerry (EMT-B)
   Crew #1                        Crew #2

Exhibit B

Palm Beach Gardens Police Department

OCA: *14005411*

| THE INFORMATION BELOW IS CONFIDENTIAL – FOR USE BY AUTHORIZED PERSONNEL ONLY |

**Case Status:** *CLOSED/CLEARED*     **Case Mng Status:** *NA*     **Occurred:** *10/31/2014*

**Offense:** *BATTERY - ON OFFICER, FIREFIGHTER, EMT ETC.*

**Investigator:** *HAYASHI, T. (408)*     **Date / Time:** *11/01/2014 03:15:12, Saturday*

**Supervisor:** *EVANS, J. (0184)*     **Supervisor Review Date / Time:** *11/05/2014 22:26:54, Wednesday*

**Contact:**     **Reference:** *Back Up / On Scene*

On Friday, October 1, 2014 at approximately 23:49 hours, I responded to Downtown at the Gardens (11701 Lake Victoria Gardens Ave.) in reference to a possible impaired pedestrian by on-premise security.

Upon my arrival I made contact with Mary Ann Morrison who appeared to be disoriented and unaware of her surroundings. Morrison had slurred speech and dismissed any offers for assistance, especially medical when I observed a laceration to her upper right eye area of which she claimed "Nothing happened." She abruptly got up and requested to use the restroom which was granted by security. Morrison did have a significant amount of dried blood on her pants, which may have been result of a possible medical issue. After an extended period of time inside a stall, and out of concern for her well-being, Palm Beach Gardens Fire-Rescue was summoned to assess her condition. She was highly resistant to any assistance by not allowing access to her stall which she had locked and required to be forced open. Morrison further continued to escalate the situation by refusing to exit the stall by yelling expletives to emergency personnel. Once inside the rescue rig, she had battered one of the Fire-Rescue personnel who reported it to me on-scene for which she was placed in custody. She was secured with handcuffs that were checked for fitment and double-locked for her own and others` safety.

During this time a male subject who claimed to be Morrison`s brother was on-scene, causing a disturbance and willfully hindering our efforts to care for her. He attempted to breach the rescue rig`s back door, claiming that he was going to ride inside with him against the wishes of Fire-Rescue personnel. The subject was notified numerous times to back off and refused to leave the scene by utilizing video on his mobile phone. Morrison was then transported to Palm Beach Gardens Medical Center for further treatment.

No further involvement.

Investigator Signature                                        Supervisor Signature

*Exhibit d*

# PALM BEACH GARDENS POLICE DEPARTMENT

## INTEROFFICE MEMORANDUM

**TO:**       Chief Stephen Stepp

**FROM:**   Major Christopher Barca

**DATE:**    3/4/2016

**SUBJECT:**   Complaint ref Officer Hayashi (Case Number 14-005411

This complaint is in reference to the actions taken by our Police Department and our Fire Rescue Department on the night of October 31, 2014 and the following early morning hours of November 1, 2014. The complaint was also forwarded to Division Chief James Ippolito at the Fire Department for the purposes of completing their review of the incidents that are related to their personnel.

In summary, Mr. Damien Gilliams is complaining due to his being "denied access" to his sister who was being treated while in one of the Fire Department's ambulances outside of Dirty Martini bar, located at 11701 Lake Victoria Gardens Avenue. His sister, Maryann Morrison had been called in by Dirty Martini security staff due to her possibly being impaired because she was observed to be stumbling around the bar. When Officer Hayashi arrived, he observed Ms. Morrison to be "disoriented and unaware of her surroundings." She was further described as having slurred speech, and most alarming, also had a laceration in the area of her right eye. She was very uncooperative when Officer Hayashi attempted to speak to her to find out how she had sustained her injury. She claimed "nothing happened" despite the obvious injury to her head and the presence of what the officer described as a "significant amount" of blood on her clothing, and she tried to walk away from the officer. Officer Hayashi also knew that the stumbling and the uncooperative actions of Ms. Morrison could possibly be indicative of a serious head injury. The officer also did not know if she had been the victim of a battery or if a possible assailant still was in the vicinity, but when she asked to use the bathroom, Officer Hayashi allowed her to.

Ms. Morrison was reported by Officer Hayashi to have been spending an "extended amount of time" in the locked bathroom stall, so out of an abundance of caution, and again, fearing Ms. Morrison was suffering from a serious medical condition, EMS was called to assess her condition. After several verbal requests that Ms. Morrison open the door were met with refusals, and out of concern for the health and safety of Ms. Morrison, the decision was made to reach over the partition, unlock the door and access the stall so that she could be treated. EMS personnel decided she needed to be transported to the hospital, so she was placed on a stretcher and was placed in the back of the ambulance. Once there, Ms. Morrison committed a battery upon Paramedic Nicholas Steryou, and for that, she was subsequently arrested.

Officer Hayashi states in his report that the complainant, Mr. Gilliams was indeed present when Ms. Morrison was being treated, but he also advises that Mr. Gilliams was causing a disturbance and was "willfully hindering our efforts to care for" Ms. Morrison, and attempted to gain access to the ambulance so that he could ride inside with his sister. EMS was adamant that he not be allowed into

Gilliams Complaint Pg. 2 of 3 (14-005411)

the vehicle due to privacy and other concerns-not the least of which was Mr. Gilliams' disorderly behavior. He ignored several lawful commands by Officer Hayashi to back away from the Rescue vehicle, but he refused. It is important to remember here that officers still did not know how Ms. Morrison had been injured. Was it the result of an assault and could Mr. Gilliams have been the suspect? Officers had no way of knowing at that time, so letting him into the rescue vehicle would have been extremely imprudent. Finally, Fire-Rescue was able to pull away and transport Ms. Morrison to the hospital.

In his complaint, Mr. Gilliams advises that he was given no information as to where Ms. Morrison was being transported, but if he had presented a more cooperative demeanor, the officer could have taken some time to address his questions. Ms. Morrison could easily have contacted Mr. Gilliams once at the hospital and stabilized in order to give him her location, or Mr. Gilliams could have called our police department to inquire as to Ms. Morrison's destination. Instead, Mr. Gilliams jumped into a cab and was easily able to follow the ambulance to the hospital with no problem.

Once at Palm Beach Gardens Medical Center, Mr. Gilliams and his brother Leslie Gilliams then created *another* disturbance which necessitated the response of yet another officer. At the request of hospital personnel, both Damien and Leslie were ordered to leave hospital property and were given trespass warnings due to their disorderly conduct and they were escorted off property. As Ms. Morrison was being escorted to a waiting police car following her discharge however, Leslie Gilliams came running back onto hospital property and interfered with the officers while they performed their duties. Contrary to what the complainant asserts, Leslie Gilliams was not charged with "brawling" but was charged with Breach of Peace and Trespass After Warning, both of which were appropriate under the circumstances.

In his complaint, Mr. Gilliams advises he is concerned that a "cover up" had taken place and that "something deeper" was at work in this incident. What Mr. Gilliams refuses to recognize is that officers were called to the scene by security-we did not just happen to pick Ms. Morrison out of a crowd. She was obviously injured, disoriented, and had slurred speech. Mr. Gilliams' description of his sister's injures as "superficial" is not what was presented to the officers on scene, and is the benefit of hindsight. There was no way the determination of Ms. Morrison's condition could have been made until she was seen by medical staff at the hospital-it goes no "deeper" than that. There was no "cover up". It was nothing more than emergency workers doing their job to render aid.

If the officers and EMS personnel had ignored the head injury to Ms. Morrison, ignored her disorientation and slurred speech and simply left her alone in the bathroom stall and she ended up with an even more serious medical condition due to lack of care, would Mr. Gilliams then assert we were negligent in our duty to render aid? The fact is, personnel on scene made the best determination they could with the information available at the time-all out of concern for the health and safety of Ms. Morrison. The actions of Ms. Morrison as well as the actions of the Gilliams brothers exacerbated what should have been a "routine" medical call. The disorderly conduct of Mr. Gilliams and his brother made this situation much more difficult than it should have been. Perhaps if Mr. Gilliams had presented himself calmly to the officer on scene and had not attempted to force his way into the ambulance, or along with his brother created a disturbance at the hospital, things would have ended differently. The

Gilliams Complaint (14-005411) Page 3 of 3

complainant's assertion that being assaulted is "part of the job" for a Paramedic is irresponsible at best, but clearly illustrates his attitude throughout the entirety of this incident.

On or about September 9, 2015, I met with Maryann Morrison because she was upset over what had transpired.  I explained why the officer and EMS personnel did what they did and with the exception of what Ms. Morrison felt was improper demeanor by officers at the hospital, she left stating she was satisfied with our discussion and she decided not to file a formal complaint.

In the matter of this complaint filed by Mr. Damien Gilliams, I find it to be wholly without merit, and recommend no further action be taken.

COPY



## City of Palm Beach Gardens
4425 Burns Road
PALM BEACH GARDENS, FL 33410
561-799-4300

**AMBULANCE RECORD**

21650543 (nsteryou)
Page 2 of 5

### Initial Patient Assessment

| Chief Complaint Anatomic Location | Chief Complaint Organ System |
|---|---|
| Head | Skin |

| Primary Symptom | Other Symptoms |
|---|---|
| Bleeding | |

| Primary Impression | Secondary Impression |
|---|---|
| Traumatic injury | |

| LOC | BP | SpO2 | ETCO2 |
|---|---|---|---|
| AAOx3 | 120/72 Manual Cuff | 99% RA | |

| Breath Sounds Upper | Breath Sounds Lower | | Resp Rate | Pulses |
|---|---|---|---|---|
| Left: Clear Right: Clear | Left: Clear Right: Clear | | 16 Normal | Left: Radial Right: Radial |

| Pulse Rate | Pupils | Capillary Refill | | |
|---|---|---|---|---|
| 98 Regular | Left: PERRL Right: PERRL | Instant | | |

| Skin Color | Skin Moisture | Skin Temp | Skin Appearance | |
|---|---|---|---|---|
| Normal | Normal | Warm | Normal | |

| Blood Glucose | | Neurological Status | |
|---|---|---|---|
| | | Normal | |

### Glasgow Coma Score

| GCS Total | Eye Opening | Verbal Response | Motor Response | RTS |
|---|---|---|---|---|
| 15 | 4 - Opens Eyes spontaneously | 5 - Oriented | 6 - Obeys Commands | 12 |

### Systemic Information - Assessment

| | |
|---|---|
| Head/Face | Normal |
| Neck | Normal |
| Heart | Normal |
| Abdomen Left Upper | Normal |
| Abdomen Left Lower | Normal |
| Abdomen Right Upper | Normal |
| Abdomen Right Lower | Normal |
| GU Assessment | Normal |
| Back Cervical | Normal |
| Back Thoracic | Normal |
| Back Lumbar/Sacral | Normal |
| Extremities-Right Upper | Normal |
| Extremities-Right Lower | Normal |
| Extremities-Left Upper | Normal |
| Extremities-Left Lower | Normal |

### Systemic Information - Write in Assessment

| | |
|---|---|
| Skin | warm, pink, dry |
| Head / Neck | PERRL, appx 1" laceration on right eyebrow, neg jvd, traach midline |
| Chest | breathe sounds equal and clear in all fields |
| Abdomen | 4 x quadrants soft non tender |
| Extremities | MAEx4, blood and feces noted to patients pants |

### Trauma Injuries

| Cause | Intent | Mechanism |
|---|---|---|
| Not Known | Not Known | Blunt |

| Injury | Specifics |
|---|---|
| Laceration | Face |

Steryou, Nickolas (EMT-P)
Crew #1

Suiter, Jerry (EMT-B)
Crew #2

COPY



## City of Palm Beach Gardens
4425 Burns Road
PALM BEACH GARDENS, FL 33410
561-799-4300

**AMBULANCE RECORD**

21650543 (nsteryou)
Page 3 of 5

### Sequence Chart

| Date | Time | Event | By | Description |
|------|------|-------|-----|-------------|
| 11-01-2014 | 00:09 | Dispatched | | |
| 11-01-2014 | 00:11 | Enroute | | |
| 11-01-2014 | 00:16 | On Location | | |
| 11-01-2014 | 00:16 | Transport Arrival Time | | |
| 11-01-2014 | 00:17 | Patient Contact | | |
| 11-01-2014 | 00:20 | Initial Assessment | NS | |
| 11-01-2014 | 00:38 | Departed Location | | |
| 11-01-2014 | 00:46 | Arrived Destination | | |
| 11-01-2014 | 01:08 | In Service | | |

### Patient Assessment at Destination

| LOC | BP | SpO2 | ETCO2 | |
|-----|-----|------|-------|--|
| AAOx3 | 130/78 Manual Cuff | 99% RA | | |

| Breath Sounds Upper | Breath Sounds Lower | | Resp Rate | Pulses |
|---------------------|---------------------|--|-----------|--------|
| Left: Clear Right: Clear | Left: Clear Right: Clear | | 16 Normal | Left: Radial Right: Radial |

| Pulse Rate | Pupils | Capillary Refill | | |
|------------|--------|------------------|--|--|
| 98 Regular | Left: PERRL Right: PERRL | Instant | | |

| Skin Color | Skin Moisture | Skin Temp | Skin Appearance | |
|------------|---------------|-----------|-----------------|--|
| Normal | Normal | Warm | Normal | |

| Blood Glucose | | Neurological Status | | |
|---------------|--|---------------------|--|--|
| | | Normal | | |

### Department Specifics

| | |
|---|---|
| ROSC | N/A |
| Onset of Chief Complaint | unknown |
| Bystander Defib. PTA | N/A |
| Chief Complaint | None |
| Type of Arrest | N/A |
| First Monitored Pulseless Rhythm | N/A |
| ICE Initiate | N/A |
| Bystander CPR PTA | N/A |
| Alert Called | N/A |

Steryou, Nickolas (EMT-P)
Crew #1

Suiter, Jerry (EMT-B)
Crew #2